# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. 20-cr-137** |
| | : | |
| **CURTIS LAKEITH FOWLER,** | : | **Judge Royce C. Lamberth** |
| | : | |
| **Defendant.** | : | |

## UNITED STATES' OPPOSITION TO
## DEFENDANT'S MOTION TO REDUCE SENTENCE

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this opposition to defendant Curtis Lakeith Fowler's Motion to Reduce Sentence. ECF 62. Defendant meets the initial eligibility requirements for a sentence reduction under Part A of Amendment 821 to the Sentencing Guidelines, which relates to criminal history "status points." He cannot, however, show that the 18 U.S.C. § 3553(a) purposes of sentencing warrant a reduction to his sentence as required to prevail on his motion. The Court should therefore leave defendant's sentence undisturbed and summarily deny his motion.

## Factual and Procedural History

In 2019, less than one year after sexually assaulting and strangling a woman in an unrelated case, defendant sex-trafficked two minor females and illegally possessed a firearm. As to defendant's sex-trafficking offense,

> On May 14, 2019, the Federal Bureau of Investigation Child Exploitation and Human Trafficking Task Force ("CEHTTF") was advised that several minor females ranging from 14-17 years old, who had previously been identified by law enforcement as missing and endangered juveniles, were being advertised online for commercial sex purposes. Special Agent Alix Skelton was assigned to the investigation. Agent Skelton located advertisements for Z.S., a fifteen-year-old female, and T.H.Y., a seventeen-year-old female, on megapersonals.com and listcrawler.com, two websites known to be frequently used for the posting of commercial sex advertisements.

Agent Skelton viewed multiple advertisements on these websites, as well as advertisements collected by a law enforcement database, which contained photographs of Z.S. and T.H.Y. being advertised to engage in commercial sex acts between April 25, 2019 and May 12, 2019 in areas in and around Washington, D.C. and Southern Maryland. As examples, Agent Skelton located the following advertisements (quoted text is as found in the original):

a. An advertisement posted on megapersonals.com on April 25, 2019 titled *"Young Sexy and READY"* which contained the text *"Petite Body BIG TITTIES And Nice Booty SS - 60 HH - 120 H - 240 In need of transportation to you for outcalls FaceTime and Phone Call Available For Proof Of Me"* and contained two image files depicting T.H.Y. posed suggestively, including one of her bare breasts. The contact number was listed as 202-823-7009, and the location was Washington, D.C.

b. An advertisement posted on megapersonals.com on April 26, 2019 titled *"Young HOT AND SEXY"* which contained the text, *"Hello I am looking for generous men interested in Some Grown & Sexy Adult Fun OUTCALLS serious People ONLY ♥♥♥ must Send pic wanna see me ? go head , you know you wanna call (347) 931-9661"* The advertisement contained two image files depicting T.H.Y. and three image files depicting Z.S., both posed suggestively in each image. The contact number listed was 347-931-9661, and the location was listed as Washington, D.C.

c. An advertisement posted on megapersonals.com on April 30, 2019 titled *"2 Lovely Ladies [Incall Only] Waiting To Excite Your Day (SERIOUS INQUIRIES ONLY!)"* which contained the text *"Light skin-(thick juicy titties and pussy is always wet and ready* 😍*) Brown Skin-(round fat ass,big bouncy titties,shaved pussy)"* and two image files each of Z.S. and T.H.Y. posed suggestively in underwear and lingerie. The contact number on the advertisement was listed as 443-403-7266 and the location was listed as Washington, D.C.

d. An advertisement posted on megapersonals.com on May 1, 2019 titled *"Special Late Night EscapadesCome Take A Dive Make You Feel Alive"* which contained the text *"Amazing Light Carmel, Slim Waist, Round Juicy Titties, Super Phat Wet Pussy"* and contained five image files and three video files depicting Z.S. posed suggestively, including one in which depicts her nude body. The contact number on the advertisement was listed as 262-299-6960, and the location was listed as Washington, D.C.

e. An advertisement posted on megapersonals.com on May 9, 2019 titled *"Available & Ready To PlaySweetest Sensations, Come Get Your Mind Right"* which contained the text *"⏭I'm 21Yrs Young & Very Sexy ♥ ⏭My Body Will Amaze You And My Skills Are Out Of This World ♥ ⏭My Touch Will Soothe Your Every Need ♥ ⏭Ready For Your Company NIGHT ♥*

> *OPEN MINDED & LOVE TO PLAY★SKIN SO SOFT YOU WILL KEEP COMING FOR MORE! ●Independent▯ ●Very Discreet▯ ●Respectful▯ ●NO RUSH!!▯ ●Very Friendly My services charge as below: Ss➙80 Hhr➙120 Hr➙200 6 Hrs➙850 I Love What I Do & I Want To Have A Nice Time With You CALL OR TEXT NOW 2408170418."* The advertisement contained five image files and two video files of Z.S. posed suggestively in underwear, and at least one image depicted her naked breasts. The contact number on the advertisement was listed as 240-817-0418, and the location was listed as Washington, D.C.

Willis Pierre Lewis, as well as several co-defendants, were involved in trafficking T.H.Y. and Z.S. during April and May 2019.

Fowler met Z.S. and T.H.Y. on the street near his home in Southeast Washington, D.C. in April 2019. At the time, Z.S. was 15 years old and T.H.Y. was 17 years old, and both girls had recently left a residential treatment facility in Virginia. When they met Fowler, they had very little to no money, no phones, and no possessions apart from a small backpack. Fowler told Z.S. and T.H.Y. that he could "help them make money" by engaging in commercial sex. Fowler posted advertisements for Z.S. and T.H.Y. for commercial sex on Megapersonals.com. However, neither Z.S. nor T.H.Y. engaged in any commercial sex dates as a result of those advertisements. The next day after meeting the girls, Fowler introduced Z.S. and T.H.Y. to Brittany Jones, with the understanding that Jones could provide transportation for potential commercial sex dates. . . .

Fowler and Jones had been friends for several years. Jones picked up Fowler, Smith, Z.S. and T.H.Y. in her car and drove the group to Smith's home, where Jones and Smith took photos of Z.S. and T.H.Y. Fowler did not see either Z.S. or T.H.Y. after the night at Smith's house and did not have any further involvement in the commercial sex enterprise with Lewis. On the whole, Fowler's participation in the conspiracy was brief in duration (approximately one or two days), and Fowler did not get any money from any "dates" or other commercial sex that Z.S. and T.H.Y. were involved in. Fowler did had sex with Z.S., but not for money and not as part of the commercial sex enterprise with Lewis.

ECF 47 (government's sentencing memorandum) at 4-6.

We similarly summarized defendant's offense for illegal possession of a firearm as

follows:

A review of the contents of Fowler's cell phone includes photographs of Fowler holding a firearm dating from between September 12, 2018 and May 8, 2019. In one photo from September 12, 2018, Fowler's tattoo is visible on his arm. Another photo from May 8, 2019 shows the gun that Fowler described as his "personal gun." Fowler's cell phone also contained a video and associated image file of a

semiautomatic Glock pistol containing a 30 round large capacity magazine that Fowler sent to two individuals on February 23, 2019 and February 24, 2019, in an attempt to sell the firearm. Lastly, a text message conversation from February 23, 2019 on Fowler's cell phone indicates that Fowler sold a Taurus handgun to another individual, and then instructed that individual to scratch out the serial numbers on the handgun.

*Id*. at 6-7.

On August 10, 2020, defendant pleaded guilty pursuant to a cooperation plea agreement that included an estimated guideline range of 108 to 135 months' imprisonment. Min. Entry (Aug. 10, 2020); *see also* ECF 35 (plea agreement). On September 27, 2022, the government filed a motion for a downward departure based on defendant's substantial assistance, ECF 46, thereby allowing the Court to impose a sentence unconstrained by the 10-year mandatory minimum that would otherwise apply to defendant's sex-trafficking conviction.

At sentencing on November 29, 2022, the Court found that defendant had a total offense level of 31. ECF 57 (sentencing transcript) at 8. The Court assigned defendant eight criminal history points for his prior criminal convictions—along with two additional criminal history "status points" for committing the offense while serving sentences for both robbery and assault with a dangerous weapon—for a total of 10 criminal history points and a criminal history category of V. *Id*.; ECF 49 (presentence report) at 17-24. Defendant's total offense level of 31, along with his criminal history of V, produced a guideline range of 168 to 210 months' imprisonment. ECF 57 (sentencing transcript) at 8.

In its sentencing memorandum and at the sentencing hearing, the government advocated for the 108-month sentence comprising the bottom of the guideline range estimated in the plea agreement. ECF 47 (government's sentencing memorandum) at 8-10; ECF 57 (sentencing transcript) at 10-12. Defendant, in contrast, requested a sentence of time-served. ECF 48 (defendant's sentencing memorandum) at 8-15; ECF 57 (sentencing transcript) at 12-18.

4

The Court sentenced defendant to 72 months' imprisonment. ECF 57 (sentencing transcript) at 21. The Court acknowledged defendant's assistance in prosecuting his codefendants but emphasized the nature of the instant offense and defendant's other criminal history. *Id*. The Court also stressed that the sentence would give defendant an opportunity to complete sex-offender treatment while incarcerated in the Bureau of Prisons ("BOP"). *Id*.

On October 11, 2024, defendant, through counsel, filed a Motion to Reduce Sentence. ECF 62. In his motion, defendant observes that applying Amendment 821 would lower his guideline range from 168 to 210 months' imprisonment, down to 151 to 188 months' imprisonment, and notes that he is eligible for a reduction to 65 months due to the Court departing downward from the guideline range in recognition of his substantial assistance to the government. *Id*. at 4. He asks the Court to reduce his sentence to 65 months in light of the amended guideline range and his purported post-sentencing rehabilitation. *Id*. at 4-5. Defendant also requests that the Court, assuming it declines to reduce his sentence, make clear in its order that he "is in Criminal History Category IV today, because the Court's recognition of the lower CHC would lower his custody classification and allow him to be housed in a lower security prison." *Id*. at 5.

Defendant is currently projected for release on October 22, 2025. ECF 62-1 (BOP records) at 7. Thus, granting his requested seven-month reduction would return him to the community on approximately March 22, 2025—a mere 50 days from the date of the filing of this pleading.

## ARGUMENT

### I.     The Court Should Not Reduce Defendant's Sentence.

To obtain a sentence reduction pursuant to Amendment 821, defendant must show both that he is eligible for a sentence reduction and that the § 3553(a) factors warrant a reduction to his sentence. As explained below, defendant satisfies the first, eligibility step, but does not satisfy the

second, discretionary step for a sentence reduction. The Court should therefore summarily deny his motion.

A. **Amendment 821 to the Sentencing Guidelines.**

On April 27, 2023, the Sentencing Commission submitted to Congress an amendment to the Sentencing Guidelines relating to criminal history. U.S. SENTENCING COMM'N, AMENDMENTS TO THE SENTENCING GUIDELINES 43-54 (2023), https://www.ussc.gov/sites/default/files/pdf/amendment-process/official-text-amendments/202305_Amendments.pdf (describing this amendment). This amendment is often referred to as "Amendment 821." Part A of Amendment 821 limits the impact of "status points" (*i.e.*, the additional criminal history points given to defendants for committing the offense while under another criminal justice sentence such as probation or imprisonment), *id*. at 43-35, while subpart 1 of Part B of Amendment 821 reduces the offense levels for defendants who did not receive any criminal history points—and whose offenses did not involve specific aggravating factors—by two levels, *id*. at 45-46. On August 24, 2023, the Sentencing Commission voted to give retroactive effect to both Part A and subpart 1 of Part B. *See* U.S. SENTENCING COMM'N, AMENDMENT TO THE SENTENCING GUIDELINES (Aug. 31, 2023), https://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/202308_RF-retro.pdf (discussing the Sentencing Commission's decision to make these provisions of Amendment 821 retroactive and the corresponding changes to the text of the policy statement governing retroactivity of amendments).

As relevant to defendant's motion, in Part A of Amendment 821 to the Sentencing Guidelines, the Sentencing Commission altered the "status points" provision regarding criminal history, which now appears in § 4A1.1(e). The amended provision states:

> Add 1 point if the defendant (1) receives 7 or more points under subsections (a) through (d), and (2) committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status.

Thus, unlike previously—when a defendant who committed the instant offense while under a criminal justice sentence received 2 "status points" regardless of how many other criminal history points he or she was assigned—a defendant otherwise assigned 7 or more criminal history points now receives only 1 additional status point, while a defendant otherwise assigned 6 or fewer criminal history points does not receive any status points.

**B.  Defendant Is Eligible for, but Not Entitled to, a Sentence Reduction Pursuant to Amendment 821.**

Defendant presents his motion pursuant to 18 U.S.C. § 3582(c)(2), which provides:

> [I]n the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

In § 1B1.10 of the Guidelines, the Sentencing Commission has identified the amendments which may be applied retroactively pursuant to this authority, including Part A of Amendment 821, and articulated the proper procedure for implementing those amendments.

In *Dillon v. United States*, 560 U.S. 817 (2010), the Supreme Court addressed the process for application of a retroactive guideline amendment, emphasizing that § 1B1.10 is binding. The Court declared: "Any reduction must be consistent with applicable policy statements issued by the

Sentencing Commission." *Id.* at 821. The Court required district courts to follow a two-step approach:

> At step one, § 3582(c)(2) requires the court to follow the Commission's instructions in §1B1.10 to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized. Specifically, §1B1.10(b)(1) requires the court to begin by "determin[ing] the amended guideline range that would have been applicable to the defendant" had the relevant amendment been in effect at the time of the initial sentencing. "In making such determination, the court shall substitute only the amendments listed in subsection (c) for the corresponding guideline provisions that were applied when the defendant was sentenced and shall leave all other guideline application decisions unaffected." *Ibid.*

> Consistent with the limited nature of § 3582(c)(2) proceedings, §1B1.10(b)(2) also confines the extent of the reduction authorized. Courts generally may "not reduce the defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) . . . to a term that is less than the minimum of the amended guideline range" produced by the substitution. §1B1.10(b)(2)(A). . . .

> At step two of the inquiry, § 3582(c)(2) instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by reference to the policies relevant at step one is warranted in whole or in part under the particular circumstances of the case.

*Dillon*, 560 U.S. at 827.

Defendant satisfies the first step of this inquiry relating to eligibility. At sentencing, defendant was given eight criminal history points for his prior convictions and two criminal history "status points" for committing the instant offense while serving sentences for multiple unrelated violent offenses. ECF 57 (sentencing transcript) at 8; ECF 49 (presentence report) at 17-24. Defendant's 10 criminal history points corresponded to a criminal history category of V, which, along with defendant's total offense level of 31, generated a guideline range of 168 to 210 months' imprisonment. ECF 57 (sentencing transcript) at 8. Under Part A of Amendment 821, defendant would receive only one criminal history "status point." As a result, he would have nine criminal history points, a corresponding criminal history category of IV, and a guideline range of 151 to 188 months' imprisonment.

8

A court generally may not reduce a defendant's sentence to a term below the amended guideline range. USSG § 1B1.10(b)(2)(A). However, if the court imposed the original sentence below the then-applicable guideline range pursuant to a substantial-assistance motion filed by the government, the court may reduce that sentence to a term "comparably less than the amended guideline range." USSG § 1B1.10(b)(2)(B).

Here, the Court sentenced defendant to 72 months' imprisonment, which was 57% below the 168-to-210-month guideline range that applied at sentencing. A comparable 57% reduction to the amended guideline range of 151 to 188 months corresponds to a sentence of 65 months' imprisonment. Defendant is therefore eligible for, but not entitled to, a reduction of up to seven months, to 65 months' imprisonment.

## C. **Defendant Has Not Established that the Applicable § 3553(a) Factors Warrant a Sentence Reduction.**

Although defendant meets the first, eligibility step set forth in § 3582(c)(2), he does not satisfy the second, discretionary step required to obtain a sentence reduction under Amendment 821. Specifically, he cannot show that the applicable § 3553(a) factors warrant a reduction to his sentence. His motion therefore must be summarily denied.

In *Dillon*, 560 U.S. at 827, the Supreme Court emphasized that "§ 3582(c)(2) instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized . . . is warranted in whole or in part under the particular circumstances of the case." Section 1B1.10 of the Sentencing Guidelines similarly directs that "the court shall consider the factors set forth in 18 U.S.C. § 3553(a) in determining . . . whether a reduction in the defendant's term of imprisonment is warranted." *Id.* app. note 1(B)(i); *see also* U.S.S.G. § 1B1.10 background ("The authorization of such a discretionary reduction does not otherwise affect the lawfulness of a previously imposed sentence, does not authorize a reduction in any other

9

component of the sentence, and does not entitle a defendant to a reduced term of imprisonment as a matter of right.").

Subject to the limits set forth in § 1B1.10(b), the Court may consider all pertinent information in applying the § 3553(a) factors and determining whether and by how much to reduce the defendant's sentence. In particular, the Court must consider public safety considerations, and may consider information regarding the post-sentencing conduct or situation of the defendant, whether positive or negative. *See, e.g.*, *United States v. Darden*, 910 F.3d 1064, 1068 (8th Cir. 2018). Application note 1(B)(ii) directs that "[t]he court shall consider the nature and seriousness of the danger to any person or the community that may be posed by a reduction in the defendant's term of imprisonment." Application note 1(B)(iii) further directs that "[t]he court may consider post-sentencing conduct of the defendant that occurred after the imposition of the original term of imprisonment." The application note explains that these factors are relevant in determining whether and by how much to reduce a sentence, but only within the limits set forth in § 1B1.10(b).

Thus, "[t]he grant of authority to the district court to reduce a term of imprisonment is unambiguously discretionary," even when the guideline range is actually reduced. *United States v. Vautier*, 144 F.3d 756, 760 (11th Cir. 1998). A district court has "substantial discretion" in deciding whether to reduce a sentence; even "[a]n agreement between the government and the defendant that a sentence reduction is appropriate does not bind the judge; nor is the judge's consideration of the question limited to the factors the parties regard as relevant." *United States v. Young*, 555 F.3d 611, 614 (7th Cir. 2009).

Accordingly, many courts have denied sentence reductions in situations where guideline amendments lowered the sentencing ranges. *See, e.g., United States v. Wilson*, 716 F.3d 50, 53 (2d Cir. 2013) (denial of sentence reduction was not an abuse of discretion, though earlier sentence

10

reduction had been granted despite defendant's prison misconduct, and defendant had not engaged in any new prison misconduct); *United States v. Styer*, 573 F.3d 151, 154-55 (3d Cir. 2009) (denial based on nature of original criminal conduct); *United States v. Stevenson*, 332 F. App'x 261 (6th Cir. 2009) (unpublished) (reduction denied despite eligibility under amendment, based on disciplinary infractions in prison, and lengthy criminal record); *United States v. Dunn,* 728 F.3d 1151, 1159-60 (9th Cir. 2013); *United States v. Arceneaux*, 297 F. App'x 819 (10th Cir. 2008) (unpublished) (reduction denied due to disciplinary record in prison).

Here, there are at least four reasons defendant cannot show that the § 3553(a) factors warrant a reduction to his sentence. The first reason is the nature of the offense. Defendant's conduct was unconscionable. He attempted to sex-traffic two vulnerable children—a 15-year-old and a 17-year-old who had recently left a residential treatment facility and who were on the streets with only a small backpack—and played an integral role in another person actually sex-trafficking the children. As one of the victims explained in a victim-impact statement filed with the Court under seal, the offense "destroyed [her] childhood, [her] teenage years, and [her] early adulthood." Defendant also had sex with the 15-year-old while attempting to sex-traffic her.

The second reason the § 3553(a) factors do not support a reduction is defendant's criminal history. Defendant has prior convictions for offenses such as robbery in 2016, assault with a dangerous weapon in 2016, sex abuse in 2018, and altering a serial number from a firearm in 2019. ECF 49 (presentence report) at 17-24.

Defendant's robbery conviction relates to an incident in which a woman and another person pulled to the side of the road due to mechanical problems with their vehicle. *Id*. at 18. Defendant and his accomplice approached the victims. *Id*. The accomplice snatched the woman's cell phone, and defendant lifted up his shirt to expose a handgun in his waistband. *Id*. Defendant took the gun

out of his waistband and instructed the victims to give up their property. *Id*. During this time, defendant chambered one round and threatened the victims' lives. *Id*. Defendant and his accomplice then fled the scene. *Id*.

Regarding the assault with a dangerous weapon conviction, the presentence report relates that defendant got into an altercation with a law enforcement officer responding to an area where multiple gunshots were heard. *Id*. at 21. The altercation culminated in the officer shooting defendant after defendant disregarded multiple verbal commands, raised a firearm from his waistband, and pointed the firearm at the law enforcement officer. *Id*.

Defendant's sex abuse conviction involved the following conduct:

[T]he complainant and the defendant had a prior sexual encounter, and the complainant's son mistakenly called the defendant with the complainant's cell phone. The defendant made contact with the complainant and they both agreed the defendant would come to the complainant's apartment to talk. Once there, they talked for a half an hour and the defendant attempted to kiss the complainant, but she pushed him off and told him she didn't want to deal with him.

Defendant Fowler pulled the complainant close and they began tussling on the bed. The defendant pinned the complainant on the bed and told the complainant she should let him give her oral sex, but she said no. The defendant then removed the complainant's underwear and placed his tongue in between her buttocks, licking her anus. This led to a further physical altercation, but the complainant was able to escape from the defendant.

The complainant informed the defendant she wanted him to leave, but he refused and forced the complainant back on the bed, strangling her for about a minute, to the point where she could not breathe. The complainant was hitting her head against the wall in the hopes someone might hear her.

The complainant was able to break loose and fought with the defendant, but he cornered her in the closet and strangled her again. The complainant reached for something to hit the defendant with, but the defendant stopped assaulting the complainant, said some words about him being on probation and left the apartment.

The complainant had several large abrasions on her back and marks around her neck.

*Id*. at 23.

Given defendant's history of violence and sex offending, the instant offense merits *at least* a 72-month sentence, which remains wholly appropriate—if not overly lenient—in light of the § 3553(a) factors such as affording adequate specific and general deterrence and promoting respect for the law. This remains true even when considering the fact that defendant would now face a lower guideline range due to a change in the "status points" provisions. This Court found that the § 3553(a) factors warranted a sentence of 72 months when it sentenced defendant in November 2022, and defendant has failed to establish that Amendment 821 has altered the § 3553(a) factors in his case so much that the Court should disturb the 72-month sentence it imposed just over two years ago.

The third reason the § 3553(a) factors do not support a reduction to defendant's sentence is defendant's post-sentencing conduct. Less than 18 months ago, in August 2023, defendant tested positive for both amphetamine and methamphetamine. Gov. Ex. 1: DHO Report (No. 3818016) at 2. His use of drugs in prison, especially given his drug abuse in the community, *see* ECF 49 (presentence report) at 29, is concerning. Even more troubling when considering that defendant has repeatedly committed sex crimes in the community is his failure to complete sex-offender treatment. Despite BOP offering defendant the opportunity to participate in a sex-offender treatment program in 2023, and contrary to the Court's recommendation that defendant participate in a counseling program for sex offenders in BOP, ECF 57 (sentencing transcript) at 21, defendant *declined* this treatment. ECF 62-1 (BOP records) at 6. Through his post-sentencing conduct, defendant has therefore demonstrated that the § 3553(a) factors—especially the need to protect the public from further crimes of the defendant—do not weigh in favor of reducing his sentence.

The fourth and final reason defendant has not met his burden to establish that the § 3553(a) factors merit a reduction to his sentence is that the applicable guideline range played a minimal

role in his sentence. The government filing a substantial-assistance motion on defendant's behalf exempted him from the 120-month mandatory minimum and resulted in the guideline range shaping his sentence even less than in a typical case. Indeed, the parties focused on the § 3553(a) factors and the nature and extent of defendant's cooperation—*not* the guideline range—in advocating for a specific sentence. *See generally* ECF 47 (government's sentencing memorandum); ECF 48 (defendant's sentencing memorandum); ECF 57 (sentencing transcript). Quite simply, given defendant's cooperation, the guideline range played a minimal role in determining his sentence. A subsequent guideline amendment lowering that range does not meaningfully alter the Court's weighing of the key sentencing factors in this case, much less merit a reduction to defendant's sentence.[1]

In sum, defendant has come nowhere near meeting his burden to show that the § 3553(a) factors warrant a reduction to his sentence. The Court should therefore summarily deny his motion.

## II.   <u>The Court Should Not Issue an Order Reducing Defendant's Criminal History Category.</u>

Recognizing that the Court may deny his request for a sentence reduction, defendant also seeks alternative relief. Specifically, defendant requests that the Court make clear that he "has 9 criminal history points and is in Criminal History Category IV today, because the Court's recognition of the lower CHC would lower his custody classification and allow him to be housed in a lower security prison." ECF 62 at 5. We do not object to the Court specifying, in a memorandum order denying defendant's request for a sentence reduction, that defendant would be placed in criminal history category IV rather than in criminal history category V after applying Part A of Amendment 821. However, to the extent defendant is asking for a judicial finding

---

[1] This is particularly true given that defendant's 72-month sentence remains *less than half* of the bottom of the amended guideline range of 151 to 188 months' imprisonment.

formally reducing his criminal history score, 18 U.S.C. § 3582 does not permit a Court to revise—through an order or an amended statement of reasons—a defendant's criminal history score for defendants who are ineligible for a sentence reduction or who the Court determines do not warrant a reduction to their sentences.

As defendant notes in his motion, some courts have found that they possess authority to issue an order reducing a defendant's criminal history score under Amendment 821 even if the court does not reduce the defendant's sentence. *Id*. Other courts, in contrast, have more recently ruled that no such authority exists. *See, e.g.*, *United States v. Nesbitt*, No. 17-cr-97, 2024 WL 2303809 (E.D. Ky. May 21, 2024); *United States v. Ladd*, No. 21-cr-789, 2024 WL 3647609 (N.D. Ohio Aug. 5, 2024); *United States v. Eduard Bueno-Beltran*, No. 15-cr-189, 2024 WL 3633641 (D.P.R. Aug. 2, 2024).

The latter line of cases is correct: this Court lacks authority to grant defendant's request. A criminal sentence is final, absent application of the limited circumstances addressed in 18 U.S.C. § 3582, which includes compassionate release and other narrow grounds in addition to the provision applicable to retroactive guideline amendments. *See Pepper v. United States*, 562 U.S. 476, 502 (2011) ("Once imposed, a sentence may be modified only in very limited circumstances. *See* § 3582(c)."). Although the Court clearly possesses authority to grant a reduction in sentence and then issue a statement of reasons corresponding to the amended sentence under § 3582(c)(2), upon determining that a defendant is either ineligible for a sentence reduction or that a sentence reduction is unwarranted, the Court cannot alter the defendant's criminal history score.

Assuming the Court declines to reduce defendant's sentence, defendant is effectively asking for an advisory declaration relating to his criminal history score, which lies outside the Court's authority under § 3582(c)(2). "To find standing here to attack an unenforceable statutory

provision would allow a federal court to issue what would amount to 'an advisory opinion without the possibility of any judicial relief.' *Los Angeles v. Lyons*, 461 U.S. 95, 129 (1983) (Marshall, J., dissenting) . . . . Article III guards against federal courts assuming this kind of jurisdiction." *California v. Texas*, 593 U.S. 659, 673 (2021). Indeed, as Chief Judge James E. Boasberg recently explained in denying a defendant's identical request to "make clear" in an order that the defendant's criminal history category has been reduced under Amendment 821:

> As "courts of limited jurisdiction," federal district courts must source their authority to provide requested relief in a congressional statute. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). [The defendant] has cited no statute that authorizes this Court to reduce his criminal-history score in the absence of a sentence reduction under § 3582, and the Court is not aware of any. It therefore joins the weight of considered authority in concluding that it is powerless to ["make clear in its order" that defendant's criminal history category has been reduced because of Amendment 821's retroactive application to his case].

Order Denying Motion and Supplemental Motion for Reduction in Sentence, *United States v. Anthony Wayne Glenmore, Jr.*, No. 23-cr-12, ECF 55, at 3-4 (D.D.C. Jan. 28, 2025) (Boasberg, C.J.).

To the extent a different criminal history score could benefit defendant in terms of BOP placement and programming credits, defendant may provide this information to BOP administratively and seek any administrative relief that may be available. The Court's order denying defendant's request for a sentence reduction but acknowledging that defendant would face a lower criminal history score under Amendment 821—which may, in fact, be all defendant is seeking—should be sufficient for this purpose. But the Court should not issue a separate order reclassifying defendant in terms of his criminal history score.

## **CONCLUSION**

Defendant has not established that the § 3553(a) factors warrant a reduction to his sentence. Additionally, in the absence of a sentence reduction, the Court does not possess authority to

reclassify defendant as having a lower criminal history score. The Court should therefore deny

defendant's Motion for Reduction of Sentence.

Respectfully submitted,

EDWARD R. MARTIN, JR.
United States Attorney
D.C. Bar No. 481-866

PETER S. SMITH
Chief, Special Proceedings Division
D.C. Bar No. 465-131

*/s/ Thomas Stutsman*
THOMAS STUTSMAN
Assistant United States Attorney
Minnesota Bar No. 0392603
Special Proceedings Division
601 D Street NW
Washington, D.C. 20530
(202) 252-7578
Thomas.Stutsman@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that I caused service of the foregoing to be made through the Court's ECF system on January 31, 2025.

*/s/ Thomas Stutsman*
THOMAS STUTSMAN
Assistant United States Attorney

17